UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:22-CV-00156-JHM

GREENVILLE NURSING AND REHABILITATION, LLC   PLAINTIFFS
and GREENVILLE NURSING AND REHABILITATION
HOLDINGS, LLC

V.

LARRY MAJORS, as EXECUTOR of the   DEFENDANT
ESTATE of BARABARA MAJORS, deceased

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's motion to dismiss. [DN 6]. Fully briefed, this matter is ripe for decision. For the following reason, Defendant's motion is **GRANTED IN PART AND DENIED IN PART.**

### I. BACKGROUND

Defendant Larry Majors ("Larry") is the son of Barbara Majors ("Barbara"). In early 2021, Barbara was suffering from medical issues that required her to enter a nursing home that could provide for her total needs of custodial, nursing, and medical care. [DN 1-3 at ¶ 24]. She and Larry decided to admit her to Greenville Nursing and Rehabilitation, a Greenville, Kentucky nursing home owned and operated by the Plaintiffs, both out-of-state companies (collectively "Greenville Nursing"). [*Id.* at ¶ 4; DN 1 at ¶¶ 6–7]. Before that happened, the Muhlenberg District Court appointed Larry as Barbara's guardian, granting him limited power to agree to contracts and execute instruments on Barbara's behalf. [DN 1 at ¶ 19]; *see* KY. REV. STAT. § 387.660. Larry signed a contract with Greenville Nursing on his mother's behalf. ("the Arbitration Agreement"). [DN 1-2]. The Arbitration Agreement provided that the "Resident" agreed to submit "any legal

dispute . . . arising out of, or relating to Resident's admission to facility, or any service, diagnosis, or care of the Resident provided by facility" to arbitration. [*Id*.]. Importantly,

> The term "Resident" as used in this Agreement shall refer to the resident, all persons whose claim is or may be derived through or on behalf of the Resident, including any next of kin, guardian, executor, administrator, legal representative, or heir of the Resident, and any person who has signed this Agreement on the Resident's behalf.

[*Id.*].

The Arbitration Agreement was voluntary in that it did not condition Barbara's medical care or admission into Greenville Nursing on agreeing to arbitrate her claims. [*Id.* at 1].

Barbara was admitted into Greenville Nursing on February 24, 2021, but she was only there for about three weeks. [DN 6-1 at 1]. Larry alleges that Greenville Nursing provided his mother with "woefully substandard" care during her short stay there, causing her serious medical issues such as heart failure, respiratory failure, pneumonia, and hypoxia. [*Id.* at 2; DN 1-3 at ¶ 28]. Barbara was hospitalized, but her ailments proved too much to overcome, and she died about a week after leaving the nursing home. [DN 1-3 at ¶ 85].

Larry, as executor of his mother's estate, sued Greenville Nursing and numerous other defendants in Muhlenberg Circuit Court early last year. [DN 1-3]. He brought multiple negligence claims on behalf of the estate, as well as a claim for wrongful death. [*Id.* at ¶¶ 31–86]. Greenville Nursing raised the Arbitration Agreement as an affirmative defense to Larry's claims. [DN 10 at 21]. Later that year, Greenville Nursing filed its Complaint with this Court, asking it to compel arbitration of Larry's claims and enjoin the ongoing Muhlenberg Circuit Court proceeding. [DN 1 at 6, 10–11]. It argues that any Kentucky laws that might invalidate the Arbitration Agreement are preempted by the Federal Arbitration Act, 9 U.S.C. § 2 ("FAA"), and violate Greenville Nursing's rights to due process and equal protection under the Fourteenth Amendment. [*Id. passim*; DN 10 *passim*].

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. Instead, "a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* at 663 (quoting FED. R. CIV. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## III. DISCUSSION

### A. Larry Lacked Authority under Kentucky Law to Sign the Arbitration Agreement on His Mother's Behalf, and Federal Law Does Not Preempt Kentucky Law on This Issue

Kentucky law places limits on a guardian's power to act for his ward. KY. REV. STAT. § 387.660; *see Kindred Nursing Ctrs. Ltd. v. Leffew*, 398 S.W.3d 463, 468 (Ky. App. 2013) (noting that a guardian is "a judicially appointed agent of [the ward] which possess[es] limited authority to act on his behalf"). The guardian can "give any necessary consent or approval to enable the

3

ward to receive medical or other professional care, counsel, treatment or service." *Id.* § 387.660(3). Further, he may "act with respect to the ward in a manner which limits the deprivation of civil rights and restricts his personal freedom only to the extent necessary to provide needed care and services." *Id.* § 387.660(4).

The Kentucky Supreme Court has specified that the right to a jury trial is one of the civil rights that a guardian may only agree to restrict on his ward's behalf if necessary to secure needed care. *Jackson v. Legacy Health Servs., Inc.*, 640 S.W.3d 728 (Ky. 2022). In *Jackson*, a son, as his mother's guardian, signed an arbitration agreement on her behalf when she was admitted into a nursing home. *Id.* at 730. Just as in this case, the agreement was voluntary, and the mother would have been admitted to the home whether her son signed it or not. *Id.* The Kentucky Supreme Court held that because arbitration agreements waive the right to a jury trial and signing an arbitration agreement was not essential to his mother receiving care, the son lacked authority to sign it on her behalf. *Id.* at 735.

Applying the *Jackson* decision to this case, the arbitration agreement cannot be enforced. Under Kentucky law, Larry lacked authority to sign away his mother's right to a jury trial on her claims because the arbitration agreement was not necessary to his mother receiving care. *See* Ky. Rev. Stat. § 387.660(4); *Jackson*, 640 S.W.3d at 735. The question presented here is whether the FAA preempts Kentucky law.

The United States Supreme Court has described two specific situations where the FAA preempts a state law or rule. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 197 (6th Cir. 2016) (citing *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011)). The first situation is "[w]hen state law prohibits outright the arbitration of a particular type of claim." *Concepcion*, 563 U.S. at 341. The Court stated that in this situation "the analysis is straightforward: The

4

conflicting rule is displaced by the FAA." *Id.* This applies whether the rule stems from a state statute, regulation, or court decision. *See id.* at 341–42. The second situation occurs "when a doctrine normally thought to be generally applicable . . . is alleged to have been applied in a fashion that disfavors arbitration." *Id.* at 341. In this situation, the court "must determine whether the state law rule would have a 'disproportionate impact' on arbitration agreements." *Richmond Health*, 811 F.3d at 197 (citing *Concepcion*, 563 U.S. at 341–42). The state law must "put arbitration agreements on an equal plane with other contracts" to comply with the FAA. *Kindred Nursing Ctrs. Ltd. v. Clark*, 581 U.S. 246, 252 (2017). But states are not precluded from creating "a new, generally applicable rule of law in an arbitration case" as long as the rule does "in fact apply generally, rather than single out arbitration." *Id.* at 254 n.2.

Greenville Nursing points out that a sister court recently ruled on this same question. [DN 10 at 9]. In *Diversicare Leasing Corp. v. Broughton*, the United States District Court for the Eastern District of Kentucky, in a case with similar facts, held that the FAA preempts the *Jackson* decision. *Diversicare Leasing Corp. v. Broughton*, No. 22-40-DLB, 2022 WL 16927789, at *6 (E.D. Ky. Nov. 14, 2022). Respectfully, this Court is not persuaded by the reasoning is *Diversicare*. The *Diversicare* court said that *Jackson* "explicitly held that a ward's right to a trial by jury cannot be waived via an agreement to arbitrate. Per *Jackson*, not only are agreements to arbitrate 'disfavored,' they are prohibited." *Id.* But *Jackson* does not, as *Diversicare* appears to suggest, "prohibit[] outright the arbitration of a particular type of claim." *Concepcion*, 563 U.S. at 341. The type of claim presented here, and in *Jackson* and *Diversicare,* is a personal injury claim against a nursing home. Kentucky law does not prohibit such a claim from being arbitrated—it only requires that a guardian have the authority to enter into such an arbitration agreement on behalf of his ward. Likewise, a guardian has no authority to agree to *any* unessential

5

contract that restricts the ward's civil rights. *Id.*; KY. REV. STAT. § 387.660(4); *supra* at 6. The *Diversicare* opinion contains no discussion of how arbitration agreements are treated compared to other types of contracts. This Court believes that such an analysis is essential to determining if arbitration agreements are put "on an equal plane with other contracts." *Clark*, 581 U.S. at 252.

Kentucky law applies evenly across all situations and does not "single out arbitration" for unfavorable treatment. *See Clark*, 581 U.S. at 254 n.2. *Jackson* simply held that the right to a jury trial is a civil right covered by § 387.660(4). On its face, the statute covers all rights and personal freedoms, not just the jury-trial right. *See* § 387.660(4). A guardian is restricted from signing a non-disclosure agreement or consenting to a search of the ward's residence to the same extent that he is restricted from signing a voluntary arbitration agreement. Agreeing to arbitration is also not the only scenario where one gives up the right to a jury trial. Under § 387.660(4), a guardian also cannot to settle a civil case, plead guilty to a criminal charge, or promise not to sue someone on his ward's behalf, unless doing so was somehow necessary to the ward's care. In fact, the guardian can agree to arbitrate his ward's claims if they *are* necessary to ensuring the ward is cared for. *See id.*; *Jackson*, 640 S.W.3d at 735 (specifying that its holding extended only to arbitration agreements that are *not* prerequisites "to the provision of care or services" to wards). Thus, § 387.660(4) does not disfavor arbitration; it disfavors *every* contract that is not necessary to ensure care for the ward. *See Concepcion*, 563 U.S. at 341.

To hold otherwise, the Court would be carving an exception out of § 387.660(4) that would single out arbitration contracts for particularly *favorable* treatment. The FAA only requires that arbitration agreements be treated the same as all other contracts; it does not force states to give arbitration special treatment. *Clark*, 581 U.S. at 252. The rule from *Jackson* does "in fact apply

generally" and equally, restricting settlement agreements, pleas bargains, and covenants not to sue just as much as it does arbitration agreements. *Id.* at 254 n.2.

Greenville Nursing also argues that Larry had authority under Kentucky law to agree to the Arbitration Agreement on Barbara's behalf because KY. REV. STAT. § 387.590 states that several specific rights can be taken from a ward once they have been declared disabled, including the right to "enter into contractual relationships." KY. REV. STAT. § 387.590(7); [DN 10 at 9–10]. It argues that "[i]mplicit in this language is the fact that when these rights are taken away from the ward, they are vested in the guardian who is appointed by the same Order." [DN 10 at 10]. But § 387.590(7) also deprives the ward of the right to obtain a driver's license and, in some circumstances, the right to vote. KY. REV. STAT. § 387.590(7). If Greenville Nursing's logic held sway, guardians would be able to earn driver's licenses and vote on behalf of their wards. Such results would be absurd, so the Court will interpret the statute to avoid them. *See Ky. State Bd. of Elections v. Faulkner*, 591 S.W.3d 398, 410 (Ky. 2019) (stating that courts should "interpret statutes so as not to produce an absurd or unreasonable result").

Greenville Nursing also asserts that § 387.660(4) and *Jackson* violate the due process and equal protection clauses of the Fourteenth Amendment because they impinge on Greenville Nursing's "fundamental right to contract" and treat arbitration agreements differently from other contracts, like nursing-home admission agreements. [DN 10 at 18–21]. But "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). The Kentucky General Assembly could have found that allowing a guardian unfettered discretion over when to sign away

7

his ward's civil rights would likely lead to guardians abusing their power. Restraining a guardian's power over his ward's civil rights is, at the very least, a rational policy choice.

Greenville Nursing argues that contracting is a fundamental constitutional right, but its argument relies on outdated, disfavored, and overruled case law. [*See* DN 10 at 19 (citing *Lochner v. New York*, 198 U.S. 45 (1905), *overruled by Ferguson v. Skrupa*, 372 U.S. 726 (1963); *Allgeyer v. Louisiana*, 165 U.S. 578 (1897))]. *Lochner* is one of the most maligned cases in United States legal history. *See, e.g., Whalen v. Roe*, 429 U.S. 589, 597 (1977) ("The holding in *Lochner* has been implicitly rejected many times."); *MeadWestvaco Corp. ex rel. Mead Corp. v. Ill. Dep't of Revenue*, 553 U.S. 16, 34 (2008) (Thomas, J, concurring) (noting that the Court's "*Lochner*-era precedents" are "long-rejected"); Paul McGreal, *Alaska Equal Protection*, 15 ALASKA L. REV. 209, 239 (1998) ("The *Lochner* due process cases today are disparaged as typifying the worst in judicial activism."). The Court abandoned *Lochner*'s right-to-contract theory barely thirty years after the case was decided. *See West Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937). In *West Coast Hotel*, the Court questioned whether there was any "freedom of contract" at all, and it ruled that any regulation of contractual relationships would be upheld if it is "reasonable in relation to its subject and is adopted in the interests of the community." *Id.* at 391; *see also* Cass Sunstein, *Lochner's Legacy*, 87 COLUM. L. REV. 873, 880 (1987) (arguing that "*West Coast Hotel* signalled a critical theoretical shift, amounting to a rejection of the *Lochner* Court's conception of" government's power to regulate economic relationships). Greenville Nursing says that *Ferguson* overruled *Lochner* on grounds other than the right-to-contract theory, but it is incorrect. [DN 10 at 19]. The *Ferguson* Court stated that "[t]he doctrine that prevailed in *Lochner* . . . and like cases—that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded." *Ferguson*, 372 U.S. at 730. That

Court recognized that the *Lochner* justices found a fundamental right to contract in the Constitution purely to "substitute their social and economic beliefs for the judgment of legislative bodies." *Id.* When *Ferguson* disowned *Lochner*, it also disowned the farcical legal theory *Lochner* used to force that Court's economic-policy views onto the country.

> B. *The Arbitration Agreement Covers Larry's Wrongful-Death Claim Because by Signing the Agreement, He Made Himself a Party to It Along with His Mother*

In Kentucky, "the wrongful death action is not derivative" of the survival action but "is brought to compensate survivors for loss occasioned by the death and not to recover for injuries to the decedent." *Moore v. Citizens Bank*, 420 S.W.2d 669, 672 (Ky. 1967); *accord Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 597–99 (Ky. 2012). The claim belongs not to the decedent's estate but to specified wrongful-death beneficiaries, which include the decedent's children. *See* KY. REV. STAT. § 411.130(2); *Preferred Care of Delaware, Inc. v. Hopkins*, 5:15-CV-00191-GNS, 2016 WL 3546407, at *5–7 (W.D. Ky. June 23, 2016). A person may bring both a wrongful-death claim on his own behalf and a survival claim on behalf of a decedent in the same action. KY. REV. STAT. § 411.133. When a guardian signs an arbitration agreement purely on his ward's behalf without indicating that he is also signing in his individual capacity, he typically does not agree to arbitrate his wrongful-death claim (if he's one of the ward's statutory heirs) in the event his ward dies. *See Ping*, 376 S.W.3d at 598–99. But if the agreement's language makes the guardian a party to the contract, he agrees to arbitrate his own wrongful-death claim as well as his ward's claims. *See BLC Lexington SNF, LLC v. Petersen*, 5:19-cv-00465-GFVT, 2020 WL 3130292, at *10–11 (E.D. Ky. June 12, 2020). In *Petersen*, a son signed an arbitration contract with a nursing home as his father's representative, but the contract specified that whoever signed the document was also a party to the contract. *Id.* at *10. The court ruled that the son had to arbitrate his wrongful-death claim against the nursing home after his father died because the "son is a party to the valid

9

arbitration agreement that is sufficiently broad to encompass the wrongful death claims." *Id.* at *11; *accord BLC Lexington SNF, LLC v. Oatis*, 5:19-284-DCR, 2019 WL 6221006, at *15 (E.D. Ky. Nov. 20, 2019).

Here, the Arbitration Agreement provides that the term "Resident" also refers to "any person who has signed this Agreement on the Resident's behalf." [DN 1-2 at 1]. Larry signed the Arbitration Agreement on Barbara's behalf, so by the contract's terms, he is a "Resident." Under the agreement, the Facility and Resident agree that any claim relating to the Resident's care be resolved by arbitration. As a party to the Arbitration Agreement, Larry is bound to arbitrate any claim he may personally have arising out of Greenville Nursing's care for Barbara, including wrongful death. [*Id.*]; *see Petersen*, 2020 WL 3130292, at *10–11. There is no dispute that Larry, as Barbara's son, is a statutory wrongful-death beneficiary. *See* KY. REV. STAT. § 411.130(2). Although Larry lacked authority under Kentucky law to bind his mother to arbitrate her claims, there is no contention that Larry lacked authority to bind *himself* to arbitrate his *own* claims. As in *Petersen*, where the son had to arbitrate his wrongful-death claim because he was a party to the contract he signed on his father's behalf, Larry must arbitrate his wrongful-death claim because he is a party to the Arbitration Agreement. *See Petersen*, 2020 WL 3130292, at *11.

Larry argues that the signature line he signed on only references his representative capacity as Barbara's guardian, and the guardian cannot bind himself to a contract if he only signed as his ward's representative. [DN 13 at 14]. He believes this case is governed by *Ping*, where the court held that a daughter was not bound to arbitrate her wrongful-death claim when her mother died in a nursing home because when she signed an arbitration contract as her mother's agent, she "purported to agree on her mother's behalf, not her own, to arbitrate her mother's claims." *Ping*, 376 S.W.3d at 599. But the *Ping* contract did not contain language specifying that whoever signed

10

the contract became a party to it along with the resident she was signing for. *See id.* at 587–88. The Arbitration Agreement's phrase making the signatory a party to the contract, no matter what capacity he signed it in, distinguishes this case from *Ping*. [*See* DN 1-2 at 1].

The Court understands its decision will likely create parallel litigation that will make the parties incur additional costs, spend additional time on the case, and cause them general annoyance. But "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 203 (6th Cir. 2001). Besides, the parties could still agree among themselves to arbitrate all or none of the claims and avoid parallel litigation.

### IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Larry Majors's motion to dismiss, [DN 6], is **GRANTED** with respect to the survivor actions brought on behalf of his mother's estate and **DENIED** with respect to the wrongful-death action that he brings on his own behalf as a statutory beneficiary.

*Joseph H. McKinley Jr.*

Joseph H. McKinley Jr., Senior Judge
United States District Court

May 1, 2023

cc:    Counsel of Record